UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| 618MEDIA DIJITAL HIZMETLER LIMITED SIRKETI,<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No.  5:24-cv-02952-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 34 |

Plaintiff 618Media Dijital Hizmetler Limited Sirket ("618Media") brings this action against Defendant Apple, Inc., arising from Apple's termination of 618Media's Apple Developer Program ("ADP") account. First Am. Compl. ("FAC"), ECF No. 30. Before the Court is Apple's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 34. This motion is fully briefed. Opp'n, ECF No. 37; Reply, ECF No. 38.

After careful review of the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS** Apple's motion to dismiss with leave to amend.

**I.  BACKGROUND**

618Media is a digital marketing agency and app developer led by its founder and CEO, Oğuzhan Bilişik Karahan ("Karahan"). FAC ¶ 19. Karahan created an ADP account for 618Media on March 17, 2022, which allowed 618Media to distribute and market its apps via the Apple App Store and access Apple's developer tools and other resources. *Id.* ¶ 20. The Court will briefly summarize the agreements governing this ADP account, the account activity that led to its termination, and the parties' communications regarding Apple's decision to terminate the account.

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1

### A.     ADP Account Agreements

The ADP account is governed by the Apple Developer Program License Agreement ("DPLA") and the Apple Developer Agreement ("ADA") (together, "Contracts").[1]  *Id.* ¶ 20.

#### 1.     Provisions Regarding Termination

Both Contracts include several provisions regarding Apple's right to terminate the ADP account at its discretion.  The ADA provides "Apple may terminate or suspend [the signatory] as a registered Apple Developer at any time in Apple's sole discretion . . . . [and] reserves the right to deny your reapplication at any time in Apple's sole discretion."  *Id.*, Ex. B ("ADA") § 10.  The DPLA similarly provides "Apple reserves the right to change, suspend, deprecate, deny, limit, or disable access to the Apple Services, or any part thereof, at any time without notice" and without liability.  *Id.*, Ex. A ("DLPA") § 2.8.  It further states "Apple may also impose limits and restrictions on the use of or access to the Apple Services, may remove the Apple Services for indefinite time periods, may revoke Your access to the Apple Services, or may cancel the Apple Services (or any part thereof) at any time without notice or liability to You and in its sole discretion."  *Id.*; *see also id.* § 12 (Apple may "suspend, remove, or disable access to any Services . . . at any time without notice" and remove or cancel services "at any time, and in any case and without notice or liability"); § 7.3, Schedule 2 (Apple may limit downloads of applications "at any time, with or without cause, by providing notice of termination" and "may cease . . . allowing download[s] . . . or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review" that the developer violated enumerated sections of the Contracts, App Review Guidelines, or laws); § 11.2 (either party may terminate the agreement "for any reason or no reason" upon timely notice).

#### 2.     Provisions Regarding Fraudulent Activity

The DPLA also includes several provisions regarding suspected fraudulent activity.  DPLA

---

[1] The Court **GRANTS** Apple's request for judicial notice of the DPLA, Schedule 2 of the DPLA, and Apple's App Review Guidelines; and 618Media's request for judicial notice of Apple's 2023 App Store Transparency Report.  *See* Apple Req. for J. Notice, ECF Nos. 34-2; 618Media Req. for J. Notice, ECF No. 37-3.  The Court finds these documents not subject to reasonable dispute and capable of being accurately and readily determined pursuant to Federal Rule of Evidence 201(b).

§ 3.2(f) prohibits any acts intended to interfere with Apple Services or the DPLA's intent "including, but not limited to" actions such as submitting fraudulent reviews of applications or choosing a name that is substantially similar to another app, among others.  DPLA § 11.2(g) further provides that any Apple license will "terminate, effective immediately upon notice from Apple" if developers engage in "any misleading, fraudulent, improper, unlawful or dishonest act . . . including, but not limited to . . . falsifying consumer reviews for Your Application."

### B.      618Media's ADP Account Activity

618Media describes several issues with its account activity that gained Apple's attention and led to the termination of its account.  One of the apps 618Media marketed and distributed in the Apple App Store was called Reports AI: Followers Tracker ("Reports AI").  FAC ¶ 19.  In October 2022 and December 2022, 618Media experienced a spike in downloads ("download spikes") for Reports AI, *id.* ¶ 38, which Apple describes as "sudden and unusual increases in the number of downloads that can artificially inflate the placement of an app in App Store chart ranking." Mot. 4.  In December 2022, following these download spikes, Apple Support informed 618Media that it was out of compliance with the DPLA's prohibition against "engag[ing], or encourag[ing] others to engage, in any misleading, fraudulent, improper, unlawful or dishonest act relating to this Agreement, including, but not limited to, misrepresenting the nature of Your Application." FAC ¶ 74.  Apple instructed 618Media "to closely monitor [its] app activities" and report "any abnormal data in the future, such as an unexpected increase in downloads." *Id.* ¶ 23. In response, 618Media informed Apple that it suspected its competitors from China were attempting to sabotage its apps and asked Apple for a recommendation to help stop the issue from occurring. *Id.*  618Media alleges competitor manipulation such as this has recently been on the rise—developers have been hiring firms to market their competitors' apps to cause suspicious download spikes and get their accounts terminated by Apple.  *Id.* ¶ 40.

618Media alleges it complied with Apple's instructions and increased its app monitoring activities following this communication. *Id.* ¶ 23.  On August 23, 2023, 618Media experienced another "download spike." *Id.* ¶ 37.  That same day, Apple's App Review team identified a

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
3

1    separate issue in 618Media's recent app submission, stating that the app improperly included the

2    trademarked term, "Chat GPT." *Id.* ¶ 41. Apple advised 618Media that, "[t]o resolve this issue, it

3    would be appropriate to revise your app name and subtitle so they do not include trademarked

4    terms or popular app names." *Id.* 618Media alleges "Chat GPT" was never part of 618Media's

5    app name, but rather, "a chatbot that functioned with Chat GPT API was going to be included in

6    the app, and 618Media announced the chatbot option as an in-app event." *Id.* ¶ 43.

### C. Termination of 618Media's ADP Account

Approximately twelve hours after its message regarding the trademark Chat GPT, and before 618Media could respond, Apple sent 618 Media a termination notice for "fraudulent conduct" in violation of DPLA § 3.2(f). *Id.* ¶ 42. 618Media appealed the termination decision two days later, which was denied on August 31, 2023. *Id.* ¶ 51. 618Media's counsel contacted Apple to dispute the termination further in January 2024. *Id.* ¶ 67. Apple and 618Media's counsel exchanged correspondences regarding the reasons for termination before Apple concluded that it "properly exercised its discretion to terminate [618Media's] developer account[], and none of the submissions support reinstatement of [618Media's] account[]." *Id.* ¶ 80.

Shortly after the termination, 618Media alleges its customers across the world reached out in mass with complaints that they were unable to access 618Media's apps. *Id.* ¶ 64. 618Media alleges the sudden and unexpected termination of its ADP account caused substantial harm to 618Media and its customers. *See id.* ¶¶ 64, 65.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul*

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
4

*Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678.

If the court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.   DISCUSSION

Apple argues 618Media failed to plead facts sufficient to state claims for: (1) breach of the implied covenant of good faith and fair dealing; (2) intentional interference with contractual relations; (3) tortious interference with prospective business advantage; (4) violation of the Sherman Act; and (5) violation of the California Unfair Competition Law ("UCL").  The Court will discuss each in turn.

### A.   Implied Covenant of Good Faith and Fair Dealing

Under California law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 371 (1992) (internal quotation marks omitted).  However, the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (Cal. Ct. App. 2004) (internal citation omitted).  Accordingly, "a party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement." *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998); *see also Lewis v. Google LLC*, 461 F. Supp. 3d 938, 961 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) ("It is well established that 'the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.'")  (quoting *Carma,* 2 Cal. 4th at 373).

Apple argues 618Media failed to state a claim for breach of the implied covenant of good faith and fair dealing because: (1) Apple's conduct was expressly permitted in the contract; and (2)

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

5

regardless, 618Media's allegations are insufficient to show bad faith.

### 1. Conduct Expressly Permitted

Apple argues the Contracts provided it the right to terminate 618Media's account for any reason at any time in its sole discretion, and it exercised this right when it terminated 618Media's account. Apple highlights the following sections in the DPLA and ADA that provide it the right to terminate accounts in its sole discretion:

- ADA § 10 provides that Apple may terminate or suspend developers "at any time in Apple's sole discretion."

- DPLA § 2.8 provides that Apple reserves the right to suspend, deny, or disable access to Apple Services "at any time without notice," and may remove, cancel, or revoke access to Apple Services "at any time without notice or liability to [the developer] and in its sole discretion."

- DPLA § 11.2(g) provides that Apple's license will "terminate immediately upon notice" if developers engage in improper acts "including, but not limited to . . . falsifying customer reviews."

- DPLA § 12 provides that Apple reserves the right to suspend, remove, or disable access to any Services "at any time without notice," and may remove or cancel the Apple Services "at any time, and in any case and without notice or liability."

- Schedule 2 § 7.3 provides that Apple may cease marketing, allowing download by End-Users of applications, or take other interim measures "in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review [] that [] You have violated the terms of the Agreement, this Schedule 2, or other documentation including without limitation the App Review Guidelines."

The Court finds that, taken together, this language expressly permits the conduct alleged here—the termination of 618Media's account in Apple's "sole discretion." *See Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 803–04 (1995) (finding the contract language "at our election" expressly permitted the exercise of discretionary power); *Sarafan Mobile Limited v. Apple Inc.*,

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
6

No. 24-cv-02698-JSW, ECF No. 41, at 8 (N.D. Cal. July 30, 2025) (finding the same contract language at issue here expressly permitted termination at Apple's sole discretion); *InfoStream Grp., Inc. v. PayPal, Inc.*, No. C 12-748 SI, 2012 WL 3731517, at *8 (N.D. Cal. Aug. 28, 2012) (finding the contract expressly permitted defendant "in its sole discretion . . . to terminate this Agreement, access to its website, or access to the [defendant's] services for any reason and at any time"); *see also Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 571–72 (2021) (finding the defendant was expressly permitted, "at its sole discretion," to place holds on payments and accounts when it suspected a high level of risk); *Enhanced Athlete Inc. v. Google LLC*, No. 19-CV-08260-HSG, 2020 WL 4732209 (N.D. Cal. Aug. 14, 2020) (finding sole discretionary power was expressly permitted where the contract provided that the defendants could "'decide whether Content violates th[e] Terms of Service,' and 'at any time, without prior notice and in [their] sole discretion, [] remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service.'"); *Song fi Inc. v. Google, Inc.,* 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (holding the agreement unambiguously reserved the defendant's right to determine whether "Content violates these Terms of Service" and, "at any time, without prior notice and in its sole discretion, remove such Content"). Therefore, this conduct cannot serve as the basis for 618Media's claim. *See Solomon*, 151 F.3d at 1137 ("[A] party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement.").

      618Media's arguments to the contrary are unpersuasive. First, 618Media argues Apple's conduct was not expressly permitted because Apple's notices and communications claimed 618Media's account was terminated for fraudulent activity in violation of DPLA § 3.2(f), not the other provisions regarding discretionary termination; and 618Media's conduct did not violate any of the prohibited activities listed in DPLA § 3.2(f). Opp'n at 6–7. However, 618Media failed to present any authority for its position that Apple somehow waived its right to terminate in the other parts of the Contracts by citing to DPLA § 3.2(f) in its termination notice and communications. Further, though DPLA § 3.2(f) includes a list of prohibited activities, it also indicates that this list is "not limited to" other conduct. DPLA § 3.2(f). This language, and the language in the other

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
7

sections of the Contracts cited above, make clear that DPLA § 3.2(f) contains a *non-exhaustive* list of prohibited conduct, and Apple still reserved the right to terminate for any other reason. *See Enhanced Athlete Inc.*, 2020 WL 4732209 ("Plaintiff may not, through allegations in the complaint, undermine the plain language of the parties' agreement.") (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327, 349–52 (2000)).[2]

Next, 618Media argues that, regardless of whether Apple's conduct was expressly permitted, Apple's conduct is still subject to the covenant because, under *Carma*, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement," and "[t]he covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." Opp'n 8 (quoting *Carma, Inc.*, 2 Cal. 4th at 371). The Court finds 618Media's selective citations to *Carma* unconvincing. 618Media omits necessary context that follows this quote in *Carma*:

> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.
> . . . .
> The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith. **However, defining what is required by this covenant has not always proven an easy task.**
> . . . .
> **We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms.**

*Id.* at 373–74 (internal citations omitted) (emphasis added to the language omitted from 618Media's opposition). *Carma* and its progeny clearly establish that the implied covenant of

---

[2] 618Media also briefly notes in this section its belief that Apple's termination was pretextual. Opp'n 6–7. However, the asserted reason for termination is irrelevant given that Apple was expressly permitted to terminate "for any reason." DPLA § 2.8; s*ee also Intango, LTD v. Mozilla Corp.*, No. 20-CV-02688-NC, 2020 WL 12584274, at *8 (N.D. Cal. Aug. 25, 2020) (holding that the agreement's express terms permitted the defendant's conduct "even if [defendant]'s asserted reason for removal was pretextual") (citing *Agosta*, 120 Cal. App. 4th at 608 (finding pretext irrelevant in contract granting discretion)).

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
8

1   good faith and fair dealing cannot prohibit a party from doing what is expressly permitted in the

2   contract or add implied terms that interfere with the express terms agreed upon by the parties.  *See*

3   *Agosta*, 120 Cal. App. 4th at 607; *Solomon*, 151 F.3d at 1137; *Lewis*, 461 F. Supp. 3d at 961.

4         Perhaps recognizing that *Carma* supports Apple's arguments, 618Media attempts to

5   distinguish *Carma* by arguing that the Contracts here are "adhesion" contracts resulting from an

6   imbalance in the parties' bargaining power—an argument the plaintiff in *Carma* failed to raise.

7   Opp'n at 7–8.  The Court finds this argument both undeveloped and unsupported by the FAC.

8   Other than briefly mentioning the parties' unequal bargaining power in its opposition, 618Media

9   makes no argument or allegation that the Contracts are unconscionable or otherwise invalid or

10  unenforceable.  Rather, it appears 618Media raises a policy argument about the parties' respective

11  bargaining power, but the implied covenant is read into contracts "in order to protect the express

12  covenants or promises of the contract, not to protect some general public policy interest not

13  directly tied to the contract's purposes."  *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 26 n.7

14  (2024) (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988)) (internal quotation

15  marks omitted).[3]

16        Because Apple reserved the right to terminate 618Media's account at any time in its sole

17  discretion, 618Media has failed to identify an obligation which Apple has breached, or right which

18  Apple has undermined.  *See Guz*, 24 Cal. 4th at 349 (explaining the covenant "exists merely to

19  prevent one contracting party from unfairly frustrating the other party's right to receive the

20  benefits of the agreement actually made").  618Media's "contractual claim is thus not for the

21  enforcement of any express promise, but for imposition of a duty that would be at odds with the

22  express reservation of defendants' unfettered discretion."  *Prager Univ. v. Google LLC*, 85 Cal.

23  App. 5th 1022, 1039 (2022).[4]

---

[3] The Court also finds 618Media's attempt to distinguish *Carma* as a case that "was not a matter of discretion" unavailing.  Opp'n 8.  *Carma* explicitly examines the discretionary power to terminate a lease for financial gain and is widely cited in cases examining contract terms permitting discretion.

[4] The Court notes that, even if expressly granted, Apple's conduct could still violate the implied covenant if the agreement was not supported by adequate consideration and the express terms

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
9

### 2. Failure to Plead Facts Showing Bad Faith

Even if Apple's termination was not expressly permitted, the Court finds 618Media failed to plead facts sufficient to show bad faith.

Bad faith can be shown in several ways, including: (1) exercising discretionary power in a manner outside "the reasonable contemplation of the parties at the time of formation"; (2) "subjectively lack[ing] belief in the validity of its act; or (3) acting in a way that is "objectively unreasonable." *Carma,* 2 Cal. 4th at 372 (internal quotation marks omitted). The Court will address each in turn.

#### a. Reasonable Expectations

Though not expressly argued, 618Media notes in the Statement of Facts section that it "had a reasonable expectation that making the requested adjustments would provide sufficient compliance to pass review." Opp'n 2, 4. The FAC also states that "it was entirely outside 618Media's reasonable expectations for Apple to terminate its developer account without providing a fair opportunity to address and rectify the issues raised, especially because direct communications from Apple immediately prior to the termination provided instructions to rectify the issue." FAC ¶ 86. However, the reasonable expectations of parties are formed at the time of contracting, not throughout performance of the contract. *Carma,* 2 Cal. 4th at 372 (explaining that parties with discretionary power must exercise it "for any purpose within the reasonable contemplation of the parties *at the time of formation*") (emphasis added); *Gabana Gulf Distribution, Ltd. v. GAP Int'l Sales, Inc.*, No. C 06-02584 CRB, 2008 WL 111223, at *8 (N.D. Cal. Jan. 9, 2008), *aff'd*, 343 F. App'x 258 (9th Cir. 2009) (same). Therefore, to the extent that 618Media's reasonable expectation of an opportunity to cure is based on the language in the termination notice or on Apple's prior conduct in allowing 618Media an opportunity to fix issues,

---

granting discretionary power would render the contract illusory. *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1122 (2008), *as modified on denial of reh'g* (June 4, 2008) (citing *Third Story Music, Inc.*, 41 Cal. App. 4th at 808). However, aside from briefly noting that courts disfavor enforcing express terms that render employment contracts illusory in a different section discussing bad faith, 618Media does not present any argument that enforcement of the Contracts' express terms here would render them illusory. *See* Pl. Opp'n at 9.

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
10

618Media's argument is unavailing.

#### b.  Subjective Belief in Validity of Acts

618Media also argues Apple lacked subjective belief in the validity of its acts because "Apple terminated 618Media's account claiming in bad faith that 618Media had violated the express terms of DPLA § 3.2(f) when Apple knew 618Media had not."  Opp'n 9.  618Media alleges Apple knew 618Media did not cause the download spikes in violation of § 3.2(f) because it was aware of the growing issue with third-party competitors intentionally causing download spikes to get accounts terminated.  However, whether Apple believed that 618Media violated the express terms of DPLA § 3.2(f) is immaterial because, as discussed above, the DPLA clearly states that a violation of § 3.2(f) was not "limited to" the conduct listed in that section, and Apple was permitted in other sections of the same contract to terminate at its sole discretion for any reason.  *See Songfi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (holding whether "Luv ya" is "Content" is immaterial because either way, defendant's terms of service unambiguously reserves defendant's broad discretionary power to discontinue defendant's services at any time).  Further, allegations that Apple generally knew third parties are causing download spikes for competitors in other apps is insufficient to show that Apple knew 618Media had no involvement in the download spikes occurring on Reports AI, and 618Media has yet to proffer even a theory as to why Apple would terminate its account for any reason other than those provided to 618Media.  *See Careau & Co.*, 222 Cal. App. 3d at 1395 (explaining that breach of the implied covenant is not sufficiently supported by "an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act").

#### c.  Objectively Unreasonable Conduct

Finally, 618Media argues Apple's conduct was objectively unreasonable because "Apple required agreement to a laundry list of prohibited conduct meriting termination only to now attempt to fall back on a catchall provision that permits termination by whimsy."  Opp'n 10.  "Objectively unreasonable conduct" requires a showing of deliberate and unreasonable conduct that frustrated the terms of the contract.  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
11

App. 3d 1371, 1395 (Cal. Ct. App. 1990) (holding a defendant's conduct must "demonstrate[] a failure or refusal to discharge contractual responsibilities, prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party"). As discussed above, the express terms of the Contracts permitted Apple to terminate 618Media's account in is sole discretion, and 618Media has failed to allege facts (or advance arguments) to show that Apple's exercise of its discretion frustrated the terms of the Contracts.

\* \* \*

Accordingly, the Court **GRANTS** Apple's motion to dismiss 618Media's claims for breach of the implied covenant of good faith and fair dealing with leave to amend.[5] *See Lopez*, 203 F.3d at 1127 (holding leave to amend must be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts").

### B.     Tortious Interference

Next, Apple argues 618Media failed to state a claim for tortious interference with contractual agreements or with a prospective economic advantage.

"A party to a contract who lawfully exercises its rights under that contract is not liable for tortious interference." *Sarafan Mobile Limited*, No. 24-cv-02698-JSW, ECF No. 41, at 8 (collecting cases); *see also Putian Authentic Enter. Mgmt. Co., Ltd v. Meta Platforms, Inc.*, No. 5:22-CV-01901-EJD, 2022 WL 1171034, at \*4 (N.D. Cal. Apr. 19, 2022) (finding no tortious interference when the defendant's conduct "consists of something which [it] had an absolute right to do") (quoting *Neal v. Select Portfolio Servicing, Inc.*, No. 5:16-CV-04923-EJD, 2017 WL

---

[5] The Court notes that 618Media also appears to briefly argue that Apple's failure to conduct a reasonable investigation would independently result in a breach of the covenant but fails to expand on this argument and cites to inapplicable case law. Opp'n 10 (citing *Kelly v. Skytel Commc'ns, Inc.*, 32 F. App'x 283, 287 (9th Cir. 2002) (holding that the failure to reasonably investigate before determining whether an employee has received over the maximum payments results in breach of the implied covenant); *Campbell v. eBay, Inc.*, No. 13-CV-2632 YGR, 2014 WL 3950671, at \*2 (N.D. Cal. Aug. 11, 2014) (finding the failure to investigate was contrary to parties' legitimate expectations under "Buyer Protection Policy"); *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 895–96 (N.D. Cal. 2014) (examining the duty to investigate in a negligence claim)).

4224871, at *4 (N.D. Cal. Sept. 22, 2017) (dismissing intentional interference claim where alleged conduct conformed with the terms of the parties' agreements)). For the same reasons as those discussed above, the Court finds Apple was expressly permitted to terminate the account at any time, for any reason. Therefore, 618Media's claims that Apple's conduct constitutes tortious interference with its third-party contracts and with any prospective economic advantage necessarily fails.

Accordingly, the Court **GRANTS** Apple's motion to dismiss 618Media's claims for tortious interference with leave to amend. *See Lopez*, 203 F.3d at 1127.

### C. Sherman Act

Apple also argues 618Media failed to state a claim under Sherman Act § 2. Section 2 enumerates three antitrust violations: monopolization, attempt to monopolize, and conspiracy to monopolize. 15 U.S.C. § 2. 618Media alleges only the first: monopolization. To plead a monopolization claim, a plaintiff must allege that the defendant "(1) possessed monopoly power in the relevant market, (2) wilfully [sic] acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury." *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004).

The Court finds 618Media failed to allege facts sufficient to show anticompetitive conduct and an antitrust injury. "The conduct element requires 'the use of monopoly power to foreclose competition, to gain a competitive advantage, or to destroy a competitor.'" *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 556 (9th Cir. 2008) (quoting *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1208 (9th Cir. 1997) (internal quotation marks omitted)). "Antitrust injury is injury 'of the type the antitrust laws were intended to prevent,' which means harm to the process of competition and consumer welfare, not harm to individual competitors." *LiveUniverse, Inc.*, 304 F. App'x at 557 (internal citation omitted) (quoting *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003), and citing *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 901 (9th Cir. 2008)). "Examples of anticompetitive harm include a 'marketwide reduction in output or increase in prices.'" *Sarafan Mobile Limited*, 24-cv-02698,

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
13

ECF No. 41, at 13 (quoting *Coronavirus Rep. v. Apple Inc.*, No. 21-CV-05567-EMC, 2021 WL 5936910, at *13 (N.D. Cal. Nov. 30, 2021)).

618Media argues Apple selectively exercises discretion in bad faith for its own benefit by "deviating from or changing its guidelines when it suits Apple's interests in order to maintain and acquire its monopoly power," and that this anticompetitive conduct "hurts competition as a whole." Opp'n 15. However, 618Media's argument is untethered to facts pled in the FAC, and it does not explain how excluding developers from the App Store would serve Apple's own interests or harm competition generally. Indeed, courts in this district have repeatedly held that "decisions as to which apps are allowed to sell through the App Store is not an act that in itself causes harm the antitrust laws were designed to protect." *Coronavirus Reporter*, 2021 WL 5936910, at *15; *Sarafan Mobile Limited v. Apple Inc.*, 24-cv-02698, ECF No. 41, at 14 ("Sarafan contends that it was injured by Apple, but it has failed to link that injury to competition generally, such as by demonstrating that Apple's conduct has a market-wide effect on app pricing. It may not recast its individualized contract dispute as a Sherman Act claim on this basis."); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (finding Apple's rejection of plaintiff's app from App Store "fails to connect his supposed injury to injury to competition generally"); *see also Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1141 (9th Cir. 2022) (holding allegations of "selectively enforcing its terms and rules" and "removing Dreamstime's mobile application . . . . fall short of alleging anticompetitive conduct in the online search advertising market" because Google "harming one of its own online search advertising customers does not exclude its competitors in the online search advertising market"). 618Media did not address this line of cases, and the Court finds no reason to part company with them.

Accordingly, the Court **GRANTS** Apple's motion to dismiss 618Media's Sherman Act claim with leave to amend. *See Lopez*, 203 F.3d at 1127.

### D.    Unfair Competition Law

The UCL prohibits "unlawful," "unfair," and "fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. 618Media claims Apple violated the "unlawful" and "unfair" prongs by

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
14

violating the Sherman Act and "terminat[ing] 618Media's ADP account in bad faith." Opp'n 16; FAC ¶ 36. Because the Court found above that 618Media failed to allege a Sherman Act violation and Apple's conduct was expressly permitted in the Contracts, the Court likewise finds a failure to plead a UCL claim.

The Court therefore **GRANTS** Apple's motion to dismiss 618Media's UCL claim with leave to amend. *See Lopez*, 203 F.3d at 1127.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Apple's motion to dismiss with leave to amend. If 618Media wishes to file an amended complaint, it must do so by **October 1, 2025**.

**IT IS SO ORDERED.**

Dated: September 9, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-02952-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
15